# 23-435

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**Case No. 21-cv-3129 (MKB) (E.D.N.Y)**
_____

**CRISTIAN RODRIGUEZ,**
*Plaintiff-Appellant,*

v.

**ALEJANDRO MAYORKAS, Secretary, Department of Homeland Security;
UR MENDOZA JADDOU, Director of U.S. Citizenship and Immigration
Services; and SUSAN DIBBINS, Chief of the USCIS Administrative Appeals
Office**

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**REPLY BRIEF FOR THE PLAINTIFF-APPELLANT**

Charlotte Lawrence, Law Student Intern
María Perales Sánchez, Law Student Intern
Benjamin Rodgers, Law Student Intern
Neha Sharma, Law Student Intern
Michael J. Wishnie, Esq.
JEROME N. FRANK LEGAL SERVICES ORGANIZATION
YALE LAW SCHOOL*
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800

→

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. III

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 4

I.  Review of the failure to exercise discretion authorized by law is distinct from review of an adverse exercise of discretion and is not barred by § 1252(a)(2)(B). ...................................................................... 4

A. The failure to adjudicate a (d)(14) waiver is a failure to follow a Congressional directive ............................................................ 5

B. The Supreme Court and this Court have long recognized the distinction between review of a failure to exercise discretion authorized by law and review of a negative exercise of discretion. ................................. 6

C. USCIS ignored Mr. Rodriguez's (d)(14) waiver application. ................. 12

II. *Patel*'s interpretation of subclause (i) does not expand the reach of subclause (ii) to bar review of procedural or nondiscretionary errors. ........................... 13

A. *Patel's* textual reading does not apply to the language of subclause (ii). 14

B. The weight of authority rejects extending *Patel* to subclause (ii). ........... 17

III. Section 1252(a)(2)(D) does not bar review of Mr. Rodriguez's claims ......... 20

IV. The district court should have reviewed Mr. Rodriguez's U visa denial, because upon remand he can reapply for a (d)(14) waiver and become eligible for a U-visa. ........................................................................ 24

CERTIFICATE OF COMPLIANCE ................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Agyapomaa v. Mayorkas*, No. 3:21-cv-1499-MPS, 2023 WL 4205144

(D. Conn. June 27, 2023) .........................................................................19

*Alzaben v. Garland*, 66 F.4th 1 (1st Cir. 2023)...............................................17, 18

*Amin v. Mayorkas*, 24 F.4th 383 (5th Cir. 2022) ....................................................23

*Azatullah v. Mayorkas*, No. 1:20-cv-01069-MKV, 2023 WL 5935028

(S.D.N.Y. Sept. 12, 2023) ........................................................................18

*Bouarfa v. Sec'y, Dep't of Homeland Sec.*, 75 F.4th 1157 (11th Cir. 2023)...........18

*California v. Texas*, 141 S. Ct. 2104 (2021) ...........................................................24

*Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250 (11th Cir. 2020) .............23

*Chiquirin-Delgado v. Garland*, No. 22-3059, 2023 WL 3737505

(6th Cir. May 31, 2023)............................................................................18

*Chirico v. Jaddou,*. No. 21-cv-6278 (RPK), 2023 WL 2483415

(E.D.N.Y. Mar. 13, 2023) ........................................................................20

*Drax v. Reno*, 338 F.3d 98 (2d Cir. 2003)..................................................................7

*Firstland Int'l, Inc. v. U.S. I.N.S.*, 377 F.3d 127 (2d Cir. 2004) .......................20, 23

*Golden v. Zwickler*, 394 U.S. 103 (1969)................................................................24

*Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998) ....................................................8

*Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824 (9th Cir. 2002)........................................7

*Henderson v. I.N.S.*, 157 F.3d 106 (2d Cir. 1998)....................................................11

*Hosseini v. Johnson*, 826 F.3d 354 (6th Cir. 2016)..................................................23

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) ........................................................6, 7, 9, 21

*Igwebuike v. Caterisano*, 230 Fed. Appx. 278 (4th Cir. 2007) ................................8

*Jay v. Boyd*, 351 U.S. 345 (1956).............................................................................8

*Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172

(3d Cir. 2019) ........................................................................................................23

*Kucana v. Holder*, 558 U.S. 233 (2010)................................................................17

*Kurapati v. U.S. Bureau of Citizenship and Immigr. Servs.*, 775 F.3d 1255

(11th Cir. 2014) ....................................................................................................20

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752 (2018).........................15

*Li v. I.N.S.*, 453 F.3d 129 (2d Cir. 2006).................................................................26

*Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011)...........................................................22

*Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015)............................................20, 23

*Mia v. Renaud*, No. 22-cv-2098 (FB), 2023 WL 7091915

(E.D.N.Y. Oct. 26, 2023) ......................................................................................19

*Morales-Morales v. Ashcroft*, 384 F.3d 418 (7th Cir.2004) ..................................11

*Morina v. Mayorkas*, No. 22-cv-02994 (LJL), 2023 WL 22617

(S.D.N.Y. Jan. 3, 2023) ........................................................................................18

*Musunuru v. Lynch*, 831 F.3d 880 (7th Cir. 2016).................................................20

iv

*Nouritajer v. Jaddou*, 18 F.4th 85 (2d Cir. 2021); .................................................23

*Patel v. Garland,* 596 U.S. 328 (2022) ...........................................................14, 15

*Perez v. Wolf*, 943 F.3d 853 (9th Cir. 2019) ...........................................................11

*Rodriguez v. Nielsen,* No. 16-cv-7092 (MKB), 2018 U.S. Dist. LEXIS 169448 (E.D.N.Y. Sept. 30, 2018) ...............................................................................8

*Sepulveda v. Gonzales*, 407 F.3d 59 (2d Cir. 2005).................................................11

*Shabaj v. Holder*, 718 F.3d 48 (2d Cir. 2013).........................................................22

*Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008) ...................................10, 20, 23

*Thatikonda v. U.S. Dep't of Homeland Sec.*, No. 1:21-cv-1564-RCL, 2022 WL 425013 (D.D.C. Feb. 11, 2022)...............................................................25

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)....................7, 8

*United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72 (1957) ..................7

*United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004) ...........................................7

*Vivint, Inc. v. Mayorkas*, 614 F. Supp. 3d 993 (D. Utah 2022).............................20

*Xiao Ji Chen v. D.O.J.*, 471 F.3d 315 (2d Cir. 2006).........................................7, 21


**Statutes**

5 U.S.C. § 555(b) ...................................................................................................9

5 U.S.C. § 701(a)(1) ..............................................................................................2

5 U.S.C. § 701(a)(2) ..............................................................................................1

8 U.S.C. § 1101(a)(15)(U) ...................................................................6, 25

8 U.S.C. § 1182(c) ......................................................................................9

8 U.S.C. § 1182(d)(14) ....................................................................passim

8 U.S.C. § 1182(i) .....................................................................................22

8 U.S.C. § 1252(a)(2)(B)....................................................................4, 5, 20

8 U.S.C. § 1252(a)(2)(B)(i) ..............................................................4, 14, 22

8 U.S.C. § 1252(a)(2)(B)(ii) .......................................................5, 14, 16, 18

REAL ID Act of 2005 § 106(a), Pub. L. No. 109-13 Stat. 231 (2005) ............21, 22

**Regulations**

8 C.F.R § 212.17(b)(3) .............................................................................25

8 C.F.R. § 212.17(a) .................................................................................26

8 C.F.R. § 212.17(b)(2) .............................................................................10

8 C.F.R. § 214.14(c)(4) .............................................................................10

**Other Authorities**

Dept. Homeland Security, *Form I-192, Instructions for Application for Advance Permission to Enter as a Nonimmigrant* ..............................................26

Gerald L. Neuman, *Jurisdiction and the Rule of Law after the 1996 Immigration Act*, 113 HARV. L. REV. 1963 (2000) .....................................................6

**INTRODUCTION**

In 2015, after a frightening home invasion and certification by the New York Police Department that he had provided important assistance in its ensuing investigation, Appellant Cristian Rodriguez applied for a U (victim) visa and two waivers of inadmissibility. He requested both a general waiver of inadmissibility under 8 U.S.C. § 1182(d)(3) ("(d)(3) waiver") and a U visa-specific waiver under *id.* § 1182(d)(14) ("(d)(14) waiver"). USCIS purported to deny both waivers but limited its analysis to the (d)(3) factors. In so doing, USCIS abdicated its responsibility to implement the (d)(14) waiver by performing the required adjudication.

Mr. Rodriguez sought judicial review, maintaining that USCIS violated the Administrative Procedure Act ("APA") by failing to adjudicate his (d)(14) waiver application and by making other legal errors in denying his U visa petition. The district court dismissed, citing an inapplicable jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(B)(ii). The district court also found that 5 U.S.C. § 701(a)(2) barred review of the waiver decision, concluding that the challenged agency action had been committed to agency discretion by law. Finally, it dismissed Mr. Rodriguez's separate claim regarding his U visa. Since Mr. Rodriguez did not have a waiver of inadmissibility, the district court held that he could not state a claim upon which relief can be granted with regards to the U visa adjudication errors. In his opening brief, Mr. Rodriguez demonstrated the errors in each of these holdings.

1

The government's brief on appeal largely repeats the flawed reasoning of the district court—that 8 U.S.C. § 1252(a)(2)(B)(ii) and 5 U.S.C. § 701(a)(1) bar judicial review, and that Mr. Rodriguez cannot state a claim with regards to the U visa adjudication. The government makes two additional arguments. First, it argues that the Supreme Court's recent *Patel v. Garland* decision should be read to mean that § 1252(a)(2)(B)(ii) ("subclause (ii)") bars review of nondiscretionary decisions made in connection with discretionary adjudications. Second, it argues that 8 U.S.C. § 1252(a)(2)(D), which restores jurisdiction via petition for review over certain claims, bars review outside of such petitions for errors underlying discretionary adjudications.

This Court's precedent establishes, however, that subclause (ii) does not strip jurisdiction to review procedural or legal errors. USCIS committed such an error by failing to adjudicate Mr. Rodriguez's waiver application under 8 U.S.C. § 1182(d)(14)'s "public or national interest" standard.

Tellingly, the government does not dispute the well-settled principle that judicial review of the *failure to* exercise discretion authorized by law is distinct from judicial review of a *negative* exercise of discretion. It is the former that is at issue in this case. The government spends many pages insisting that USCIS has discretion to grant or deny a (d)(14) waiver, but nowhere does it dispute that a categorical failure to adjudicate (d)(14) waiver applications established by Congress—as USCIS did in

the case of Mr. Rodriguez and has done in many others—is unlawful. Congress did not intend to allow USCIS to refuse to adjudicate U visa-specific waivers. To hold that subclause (ii) bars review of not only the *substance* of the waiver adjudication but also the agency's *duty* to adjudicate at all would be a radical departure from foundational administrative law principles.

The government's arguments to the contrary are unavailing. It misreads § 1252(a)(2)(B), insisting that *Patel*'s close textualist reading of the text of § 1252(a)(2)(B)(i) ("subclause (i)") applies to subclause (ii). But the two provisions use different language and serve distinct, albeit complementary, purposes. Neither the holding nor the reasoning of *Patel* applies to subclause (ii).

The government's atextual and ahistorical reading of § 1252(a)(2)(D) is similarly incorrect. Section 1252(a)(2)(D) restores jurisdiction that has otherwise been stripped over constitutional and legal claims on a petition for review, as this Court has already clarified, and it has no operation where a different provision has not stripped jurisdiction. The government's reading is absurdly broad, and it does not cite a single court that treats § 1252(a)(2)(D) in this way.

Finally, the district court should have reviewed Mr. Rodriguez's purely legal claim that he is the victim of a qualifying crime and thus eligible for a U visa. Correcting this error would afford him the chance to reapply for a waiver, submit additional evidence, and obtain a visa adjudication free from legal error.

3

The government's interpretation of § 1252(a)(2)(B)(ii) would place agency refusals to implement Congressional programs beyond the reach of the courts. This would leave Mr. Rodriguez and other U visa applicants—who have risked their safety to assist law enforcement—utterly without redress in the face of a stubborn agency refusal to apply the (d)(14) "public or national interest" standard Congress enacted specially for U visa applicants.

## ARGUMENT

**I.      Review of the failure to exercise discretion authorized by law is distinct from review of an adverse exercise of discretion and is not barred by § 1252(a)(2)(B).**

The government does not claim that USCIS has the discretion to ignore applications for (d)(14) waivers. Nor could it. The agency may not thwart Congress's purpose in creating the U visa and the (d)(14) waiver by disregarding applications for either. Federal courts have long recognized that review of a failure to exercise discretion authorized by law and review of a negative exercise of discretion are distinct. USCIS did not simply err in the substance of its adjudication of Mr. Rodriguez's application for a (d)(14) waiver, but rather failed to adjudicate at all.

The text of § 1252(a)(2)(B) does not bar review of USCIS's failure to exercise discretion, and the government does not argue otherwise. Subclause (i) bars review of "any judgment regarding the granting of relief." Subclause (ii), upon which the district court relied, bars review of "any other decision or action of the Attorney

4

General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." By its own title and terms, § 1252(a)(2)(B) applies to agency "denials" of discretionary adjudications, not to failures to exercise discretion, "failures to conduct" discretionary adjudications, or "decisions to ignore" them.

### A. The failure to adjudicate a (d)(14) waiver is a failure to follow a Congressional directive.

The government nowhere claims that it has unreviewable authority to refuse to adjudicate applications for a congressionally enacted waiver. Throughout its brief, the government consistently alleges that USCIS has the sole authority to grant or deny a (d)(14) waiver. *See* Gov't Br. 2, 4, 6, 12, 18, 24, 31. But that is not the issue in this appeal. Such an assertion speaks to an *adverse* exercise of discretion, not a *failure* to exercise discretion. Even in their strongest claim that the (d)(14) waiver "is itself" discretionary, the government clarifies that discretion lies in the decision to *grant* the waiver. Gov't Br. 24. The government must qualify its claim in this way, since agency refusal to adjudicate the waiver would violate the statutory framework and foundational principles of administrative law.

To ignore Mr. Rodriguez's application for a (d)(14) waiver is to ignore the enactment of the waiver itself. Congress passed § 1182(d)(14) to ensure that an additional, more generous waiver was available for victims of crime, like Mr. Rodriguez, who cooperate with law enforcement. In so doing, the (d)(14) waiver

5

went beyond the narrower, more generic (d)(3) waiver codified in 1952. Rodriguez Br. 4–7. Congress would not have enacted the more expansive (d)(14) waiver and made it available for individuals like Mr. Rodriguez if it intended for the agency to adjudicate only the (d)(3) waiver when a victim of a crime applied for both. A failure to exercise discretion by ignoring (d)(14) waiver applications thus undermines the Congressional purpose underlying 8 U.S.C. § 1182(d)(14) and § 1101(a)(15)(U).

**B. The Supreme Court and this Court have long recognized the distinction between review of a failure to exercise discretion authorized by law and review of a negative exercise of discretion.**

It is well-settled that a failure to exercise discretion differs from a negative exercise of discretion. In *I.N.S. v. St. Cyr*, the Supreme Court recognized the strong tradition of judicial review over the failure to exercise discretion, even in circumstances where it is not clear that such discretion would have been exercised favorably. 533 U.S. 289, 307 (2001) ("Traditionally, courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand."); *see also* Gerald L. Neuman, *Jurisdiction and the Rule of Law after the 1996 Immigration Act*, 113 HARV. L. REV. 1963, 1991 (2000) (analyzing distinction between "the legally erroneous failure to exercise discretion" and "a substantively unwise exercise of discretion.").

This was not a newly minted rule of federal jurisdiction or administrative law; the Supreme Court previously recognized and applied this principle in other

immigration cases. In *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), the Court held that a noncitizen had a right to challenge the Executive's failure to exercise the discretion authorized by law. There, the Court "emphasize[d] that [it was not] reviewing and reversing the *manner in which* discretion was exercised . . . [but r]ather, . . . the Board's alleged *failure to exercise* its own discretion, contrary to existing valid regulations." *Id.* (emphasis added); *see also United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 (1957) (distinguishing between the Board's application of the correct legal standard and its ultimate discretionary decision to deny such relief).

This Court and other circuit courts have also explicitly recognized this distinction. *See Xiao Ji Chen v. D.O.J.*, 471 F.3d 315, 329 n.7 (2d Cir. 2006) ("[W]here the determination at issue involves a discretionary decision by an IJ or the BIA, we do not review the '*manner in which* discretion was exercised' . . .") (emphasis added) (quoting *St. Cyr*, 533 U.S. at 314 n.38); *United States v. Copeland*, 376 F.3d 61, 72 (2d Cir. 2004) ("Critical to our reasoning, of course, is the distinction between a right to seek relief and the right to that relief itself, although often the concepts overlap as a practical matter."); *Drax v. Reno*, 338 F.3d 98, 118 (2d Cir. 2003) (holding that the IJ's failure to exercise discretion warranted review and remand of removal proceedings for the plaintiff); *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 828 (9th Cir. 2002) (distinguishing claims that "the INS somehow failed

7

to exercise discretion in accordance with federal law" and that "the INS simply came to an unwise, yet lawful, conclusion when it did exercise its discretion."); *Goncalves v. Reno*, 144 F.3d 110, 125 (1st Cir. 1998) ("[I]t is no answer . . . to emphasize the broad discretion of the political branches in immigration matters. It was the intent of Congress that such discretion be exercised.").[1]

A failure to exercise discretion authorized by law (i.e., a failure to adjudicate) is in effect a failure to perform a statutorily required legal determination. In the same vein as *St. Cyr* and *Accardi*, courts have long recognized the fundamental distinction between the reviewability of the application of legal standards to a relief determination, and the reviewability of the relief itself. *See Accardi*, 353 U.S. at 77 (distinguishing between the Board's application of the correct legal standard and Board's ultimate discretionary decision to deny such relief); *Jay v. Boyd*, 351 U.S. 345, 353–354 (1956) (noting that a threshold determination such as eligibility for relief that is "governed by specific statutory standards" provides "a right to a ruling" even though actual grant of relief was "a matter of grace."); *Igwebuike v. Caterisano*, 230 Fed. Appx. 278, 282 (4th Cir. 2007) ("A court may review the legal standards

---

[1] *See also Rodriguez v. Nielsen,* No. 16-cv-7092 (MKB), 2018 U.S. Dist. LEXIS 169448 (E.D.N.Y. Sept. 30, 2018), at *11 (holding that although 8 U.S.C. § 1184(p)(6) gave the agency discretion whether to grant an Employment Authorization Document (EAD) pending adjudication of a U visa petition, it did not give the agency discretion not to adjudicate EAD applications) (collecting cases).

8

applied in a determination of eligibility, but it may not remand a decision to grant or withhold discretionary relief.").

The government's argument implies that the text of the statute does not explicitly mandate adjudicating (d)(14) waiver applications. Gov't Br. 26; 8 U.S.C. § 1182(d)(14). But the very existence of the (d)(14) waiver requires adjudication—Congress does not create a waiver if it does not mean for an agency to adjudicate it. Nor does Congress customarily include additional provisions explicitly instructing agencies to decide waivers Congress created for it to adjudicate.

The waiver's creation thus implies its mandatory adjudication. USCIS is not free to ignore statutory language enacted by Congress. *See* 5 U.S.C. § 555(b) (under the APA, an agency shall "conclude a matter presented to it" within "a reasonable time"). This point is illustrated by the Supreme Court in *St. Cyr*, in which the waiver at issue (the "§ 212(c) waiver") also contained the word "may." 533 U.S. at 295 (examining 8 U.S.C. § 1182(c), which provided that certain noncitizens "may be admitted in the discretion of the Attorney General . . . ."). Necessary to the holding in *St. Cyr* was the understanding that the use of the word "may" in a statute does not give the government license to ignore it. *Id*. at 290. Thus, even though the statute afforded ultimate discretion to grant or deny a § 212(c) waiver, the Supreme Court still found that the agency lacked discretion to ignore requests for one. If the government's arguments here are correct, it would have won *St. Cyr*.

9

The government's implication that it can effectively ignore a properly filed (d)(14) waiver request is also inconsistent with the agency's U visa regulations. USCIS rules make U visa adjudications mandatory, *see* 8 C.F.R. § 214.14(c)(4) ("USCIS *shall* conduct a de novo review of all evidence submitted in connection with Form I-918 [for a U visa] . . . .") (emphasis added), and factors related to waiver decisions as well. 8 C.F.R. § 212.17(b)(2) ("[Treatment of waiver application.] In the case of applicants inadmissible on criminal or related grounds, in exercising its discretion USCIS *will* consider the number and severity of the offenses of which the applicant has been convicted.") (emphasis added). The government's implication that it may ignore Mr. Rodriguez's (d)(14) waiver is contrary to its own regulations.

The government spends many pages insisting that USCIS has discretion to *grant* or *deny* a (d)(14) waiver, *see* Gov't Br. 2, 4, 6, 12, 18, 24, 26, 27, 31, but these contentions miss the mark. The issue in this case is USCIS's failure to adjudicate Mr. Rodriguez's application for a (d)(14) waiver, just as USCIS has refused to adjudicate (d)(14) waiver applications in countless other U visa cases. *See* Amicus Curiae Brief of Brooklyn Defender Services, *et al.*, Dkt. No. 87 at 10–14.

Nor is review of that failure barred by § 1252(a)(2)(B). The failure to decide the waiver request is a nondiscretionary legal error, and the precedent in this circuit as well as others has made clear that § 1252(a)(2)(B) does not apply to such errors. *See* Rodriguez Br. 29–33; *Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008);

*Sepulveda v. Gonzales*, 407 F.3d 59 (2d Cir. 2005); *Perez v. Wolf*, 943 F.3d 853 (9th Cir. 2019) (holding that judicial review of U visa petitions is not precluded by subclause (ii)). [2]

Were the government to truly mean that all decisions about *whether* to adjudicate (d)(14) waivers are discretionary decisions, it would leave courts with no power to review agency interpretations of immigration law. This would be a radical outcome, repeatedly rejected by courts. *See Henderson v. I.N.S.*, 157 F.3d 106, 120 (2d Cir. 1998) ("[F]or at least a hundred years, the courts have reviewed the executive branch's interpretation of the immigration laws, and have deemed such review to be constitutionally mandated . . . ."); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 422 (7th Cir.2004) (IIRIRA "does not clearly indicate that the exclusion from judicial review is so extreme as to purport to authorize the Attorney General to disregard . . . statutory criteria.").

This Court and the Supreme Court have long recognized the distinction between a failure to exercise discretion and a negative exercise of discretion. The former is, in effect, a failure to perform statutorily required legal determinations. In this case, Congress's creation of the (d)(14) waiver means that agency adjudication

---

[2] The government's argument that 5 U.S.C. § 701(a) bars judicial review of the (d)(14) waiver because the challenged agency action is "committed to agency discretion by law" is unavailing for the same reasons—the challenged action here is the adjudication of the waiver, which is not an action committed to agency discretion by law. *See also* Rodriguez Br. 39 n.13.

of it is mandatory, and the government's implication that it may ignore Mr. Rodriguez's (d)(14) waiver contradicts its own regulatory scheme. To find that USCIS has discretion whether to adjudicate waiver applications at all would depart drastically from bedrock principles of administrative law and separation of powers.

### C. USCIS ignored Mr. Rodriguez's (d)(14) waiver application.

USCIS failed to consider Mr. Rodriguez for a U visa-exclusive waiver under § 1182(d)(14). Mr. Rodriguez applied for both a (d)(14) and a (d)(3) waiver. Joint Appendix ("J.A.")-19. USCIS, however, adjudicated only the latter. Rodriguez Br. 20–22; J.A.-22. The analysis in its decision denying a waiver relied entirely on the language and legal standards of (d)(3). USCIS made only passing mention of (d)(14), 1) reproducing its statutory and regulatory text in the "Applicable Law" section, J.A.-19 to 20, 2) making a conclusory statement in the order's conclusion, J.A.-29, and 3) including one reference to "public interest" in the analysis that was not representative of that term as used in subsection (d)(14). Rodriguez Br. 21.

Even the government's response brief concedes that USCIS made only nominal reference to the (d)(14) waiver request using perfunctory, boilerplate language. Gov't Br. 26. The government offers no further information, clarification, or support for the position that USCIS actually conducted a (d)(14) analysis. Instead, the government repeats the undisputed point—not at issue on this appeal—that the ultimate denial of a (d)(14) waiver is discretionary. Gov't Br. 26. In this way, the

government continues to conflate the failure to exercise discretion with an unfavorable exercise of discretion.

Further, the government does not dispute the point made by Mr. Rodriguez and amici that that the (d)(3) and (d)(14) waivers, with their distinct legislative histories, must correspond to different analyses. Rodriguez Br. 22–26; *see generally* Amici Curiae Brief of ASISTA and Tahirih Justice Center, Dkt. No. 47; Amici Curiae Brief of Brooklyn Defender Services, *et al.*, Dkt. No. 87. Once again, the government's only response is to emphasize the discretionary nature of the ultimate decision. Gov't Br. 27 n.8.

USCIS thus did not merely deny Mr. Rodriguez relief—it functionally shredded his (d)(14) application by failing to adjudicate it. The best and fairest read of the USCIS decision in this case is that it did not consider or decide Mr. Rodriguez's application for a (d)(14) waiver as required by law. Moreover, to the extent the Court determines that it is at least *ambiguous* as to whether USCIS made a decision on the (d)(14) waiver, then the Court should vacate and remand to the district court, with instructions to remand to USCIS to follow the statutory language of 8 U.S.C. § 1182(d)(14) and explain whether it is "in the public or national interest" to grant Mr. Rodriguez a waiver.

**II.** *Patel*'s interpretation of subclause (i) does not expand the reach of subclause (ii) to bar review of procedural or nondiscretionary errors.

13

In requesting that this Court extend *Patel v. Garland,* 596 U.S. 328 (2022), to subclause (ii), 8 U.S.C. § 1252(a)(2)(B)(ii), *see* Gov't Br. 22–23, the government asks the Court to go farther than any other Court of Appeals and foreclose Article III review of agency error outside of removal proceedings[3]—so long as the ultimate result of the adjudication is discretionary. The government's extreme approach is irreconcilable with the text of § 1252(a)(2)(B); *Patel* turned on the language of subclause (i)—language that Congress did not include in subclause (ii). Moreover, while the government cites two S.D.N.Y. cases that extended *Patel* to subclause (ii), Gov't Br. 23, those cases represent a minority approach: the weight of authority rejects application of *Patel* to the distinct language and intent of § 1252(a)(2)(B)(ii).

### A. *Patel's* textual reading does not apply to the language of subclause (ii).

*Patel*'s text-specific interpretation of § 1252(a)(2)(B)(i) is plainly inapplicable to the distinct language in § 1252(a)(2)(B)(ii). Subclause (i) bars federal jurisdiction of "any judgment regarding the granting of relief under" certain sections of the Immigration and Nationality Act ("INA"). Subclause (ii), by contrast, bars review of "any other decision or action" of the agency "the authority for which is specified under this subchapter to be in the discretion of" the agency. § 1252(a)(2)(B)(i)–(ii).

---

[3] Legal and constitutional errors in removal proceedings are reviewable by petition for review per 8 U.S.C. § 1252(a)(2)(D).

*Patel* held that subclause (i) forecloses judicial review of certain specified adjudications and of factual findings underlying those outcomes. *Patel v. Garland*, 596 U.S. 328 (2022). *Patel* hinged on a close reading of the phrase "any judgment regarding" the granting of specified forms of immigration relief. The Court held that "regarding" expanded the meaning of "judgment." *Id.* at 338-39.[4] "[T]he use of 'regarding' in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Id.* (internal quotation omitted).

In drafting § 1252(a)(2)(B), Congress decided that subclause (i) would target "judgments regarding" specified relief in subclause (i), but subclause (ii) would target decisions or actions "the authority for which is specified under this subchapter to be in the discretion" of the agency. Subclause (ii) lacks the broadening term "regarding" and simultaneously contains a lengthy and specific instruction cabining the types of decisions or actions for which review is foreclosed—discretionary ones. The limiting phrase, "the authority *for which* is specified under this subchapter to be

---

[4] In the Court's reading, the word "any" also expanded the meaning of "judgment" to encompass nondiscretionary judgments. *Patel v. Garland*, 596 U.S. 328, 338 (2022). Although subclause (ii) also uses the word "any," it is modified by a clause that subclause (i) lacks: "the authority for which is specified . . . to be in the discretion" of the agency. "Any judgment regarding the granting of relief" stands in contrast to "any other decision or action" the authority for which is specified to be discretionary. The latter is subject to the subclause (ii) bar so long as the authority for that decision or action is statutorily specified to be discretionary. That both subclauses use the word "any" is therefore of no moment given the limiting effect of subclause (ii)'s specific reference to discretionary authority, *see infra* p. 16.

15

in the discretion of the" agency, requires by its terms that the specific action or decision be discretionary. 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

That subclause (ii) would include such a limitation makes sense because the phrase "any other decision or action" would otherwise be overbroad, potentially reaching any decision or action related in any way to a down-stream decision that was ultimately discretionary. It is also significant that subclause (i) includes no specific reference to discretion. While subclause (i) was intended to foreclose all review of judgments regarding the enumerated discretionary adjudications, subclause (ii) catches and incorporates any other discretionary decisions or actions not covered. But where subclause (i) enumerates specific adjudications and covers any decisions subsidiary to those, subclause (ii) declines to do so, instead requiring that any specific subsidiary actions or decisions be designated discretionary by the statutory subchapter to trigger the review bar. The provisions are therefore complementary, but distinct in function and scope.

The performance of a mandatory analysis or compliance with a required process—including adjudication of applications for which Congress has delegated authority to adjudicate—cannot be said to be "in the discretion" of the agency. To trigger subclause (ii)'s bar, the authority for the particular decision or action—here, whether to perform the adjudication—must be given to agency discretion by statute. *See also Kucana v. Holder*, 558 U.S. 233, 247 n.14 (2010) ("[O]ther decisions falling

16

within [subclause (ii)'s] compass are most sensibly understood to include only *decisions made discretionary* by Congress.") (emphasis added).

There is no indication in the text or history of (d)(14) that Congress intended for the agency to ignore the statutory enactment of a new, more generous waiver specific to crime victims or to disregard applications for this new waiver. To the extent that the INA has not given USCIS the discretion to decline to perform the waiver adjudication under the standard prescribed in § 1182(d)(14), § 1252(a)(2)(B) does not bar review of the failure to adjudicate or to adjudicate according to the procedure mandated. The INA requires the agency to consider whether it is "in the public or national interest" to waive a ground of inadmissibility on behalf of a U visa petitioner. *Id*. § 1182(d)(14).

**B. The weight of authority rejects extending *Patel* to subclause (ii).**

The government urges the Second Circuit to be the first to take the extraordinary step of applying *Patel*'s expansive holding to subclause (ii). No court of appeals has gone so far. The First Circuit, for instance, recently declined to apply *Patel*'s interpretation of subclause (i) to subclause (ii). *Alzaben v. Garland*, 66 F.4th 1, 6 (1st Cir. 2023) (noting "the Supreme Court's gloss on the term 'any judgment'

17

in section 1252(a)(2)(B)(i) does not directly address the scope of the term 'any decision or action' employed in section 1252(a)(2)(B)(ii).").[5]

This year, the Eleventh Circuit also confirmed that procedural errors remain outside of the scope of § 1252(a)(2)(B)(ii)'s jurisdiction stripping. *Bouarfa v. Sec'y, Dep't of Homeland Sec.*, 75 F.4th 1157, 1163 (11th Cir. 2023) ("The Secretary does not have the discretion to ignore regulations and binding precedent when he carries out the process to reach a discretionary determination, so section 1252 does not prohibit judicial review. . . .") (internal quotation omitted).[6]

The government cites two recent district court cases within this circuit, *Azatullah v. Mayorkas*, No. 1:20-cv-01069-MKV, 2023 WL 5935028 (S.D.N.Y. Sept. 12, 2023) and *Morina v. Mayorkas*, No. 22-cv-02994 (LJL), 2023 WL 22617 (S.D.N.Y. Jan. 3, 2023). *See* Gov't Br. 23. *Morina* did extend *Patel*'s holding to subclause (ii), finding it to bar review of factual errors; *Azatullah* adopted *Morina*'s reasoning and applied it to underlying legal errors as well.

---

[5] Because Alzaben was in removal proceedings and able to raise his claims via a petition for review, the Court found § 1252(a)(2)(D) saved review of his claims—but importantly, it was expressly asked to apply *Patel* to subclause (ii) and refused to do so. *Alzaben*, 66 F.4th at 7.

[6] Other circuit authority confirms Mr. Rodriguez's reading of the interplay between subclauses (i) and (ii): decisions or actions subject to the latter must themselves be discretionary—not merely related to or underlying an ultimately discretionary decision. *See Chiquirin-Delgado v. Garland*, No. 22-3059, 2023 WL 3737505, at *1 (6th Cir. May 31, 2023) ("[W]e may not review 'any judgment regarding the granting of relief under' the cancellation of removal statute, *id*. § 1252(a)(2)(B)(i), including underlying findings of fact, *Patel*, 142 S.Ct. at 1627, and *other discretionary decisions made along the way*, 8 U.S.C. § 1252(a)(2)(B)(ii).") (emphasis added).

*Morina*'s analysis contains two critical mistakes, however. First, *Morina* assumes that subclause (ii) applies wherever the agency is acting "under the authority" of an ultimately discretionary adjudication. 2023 WL 22617, at \*10. But the statutory text is clear: actions or decisions the authority *for which* is in the agency's discretion are covered. 8 U.S.C. § 1252(a)(2)(B)(ii). It is not enough that the decision be made in service of a discretionary adjudication. The authority *for that decision* must be in the discretion of the agency. Second, *Morina* relies heavily on the relative breadth of "any other decision or action." 2023 WL 22617, at \*9–10. In so doing, it ignores the cabining of the discretionary authority clause.

By contrast, other district courts in the Second Circuit have declined to apply *Patel* to subclause (ii). *See Agyapomaa v. Mayorkas*, No. 3:21-cv-1499-MPS, 2023 WL 4205144, at \*7-8 (D. Conn. June 27, 2023) (holding claim that plaintiffs did not receive an adequate "opportunity to offer evidence in support of the petition . . . and in opposition to the grounds alleged for revocation," given their "unique circumstances," to be truly procedural and therefore subject to federal court jurisdiction); *Mia v. Renaud*, No. 22-cv-2098 (FB), 2023 WL 7091915, at \*5 (E.D.N.Y. Oct. 26, 2023) (holding that subclause (ii) does not bar review of nondiscretionary eligibility determinations for discretionary relief and that *Patel* "does not compel a different decision" because subclause (ii) contains express references to discretion not contained in subclause (i)); *cf. Chirico v. Jaddou*,. No.

19

21-cv-6278 (RPK), 2023 WL 2483415, at *3 (E.D.N.Y. Mar. 13, 2023) (holding court lacks jurisdiction where claim challenged merits of decision, not procedures afforded).[7]

Nor does *Patel* overturn this Court's precedent in *Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015), *Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008), and *Firstland Int'l, Inc. v. U.S. I.N.S.*, 377 F.3d 127 (2d Cir. 2004), which remain the law of this circuit. Judicial review of procedural or nondiscretionary errors is not barred by subclause (ii),[8] and thus the agency's nondiscretionary and procedural errors are reviewable.[9]

## III.   Section 1252(a)(2)(D) does not bar review of Mr. Rodriguez's claims.

The government contends that 8 U.S.C. § 1252(a)(2)(D) strips district courts of jurisdiction over legal and constitutional claims, independent of the operation of 8 U.S.C. § 1252(a)(2)(B). Gov't Br. 29–30; 33 n.10. This interpretation is atextual, ahistorical, and contrary to this Court's precedent. Section 1252(a)(2)(D) is an expansion of judicial review, not a limitation of it.

---

[7] Other courts have refused to apply *Patel* to subclause (ii), in light of the differences in language as compared to subclause (i). *See Vivint, Inc. v. Mayorkas*, 614 F. Supp. 3d 993 (D. Utah 2022).

[8] Nor have other circuits concluded that *Patel* overturns similar precedent interpreting subclause (ii). *See, e.g., Musunuru v. Lynch*, 831 F.3d 880, 887–88 (7th Cir. 2016) (subclause (ii) does not bar review of procedural errors in discretionary decision); *Kurapati v. U.S. Bureau of Citizenship and Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) (same).

[9] In addition to failing to decide Mr. Rodriguez's (d)(14) waiver, USCIS's errors in this case include violations of binding regulations. *See* Rodriguez Br. 36–38.

20

As this Court has explained, Section 1252(a)(2)(D) limits the reach of various jurisdictional bars in Section 1252(a) by restoring jurisdiction over legal and constitutional claims on a petition for review. *Xiao Ji Chen*, 471 F.3d at 330 n.8. However, "where no jurisdiction–denying provision of the INA is implicated, a reviewing court need not resort to the jurisdictional terms of [8 U.S.C. § 1252 (a)(2)(D)] . . . ." *Id.* This is the clear meaning of the provision, which does not by its terms strip jurisdiction at all. 8 U.S.C. § 1252(a)(2)(D) ("Nothing . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.").

The text of § 1252(a)(2)(D) is consistent with its history and purpose. When Congress, in response to the Supreme Court's decision in *St. Cyr*, amended 8 U.S.C. § 1252(a)(2)(A), (B), and (C) to clarify that it was eliminating district court habeas review in removal proceedings, it added § 1252(a)(2)(D) to preserve review over legal and constitutional claims on a petition for review.[10] REAL ID Act of 2005

---

[10] The Supreme Court in *St. Cyr* suggested that it might be unconstitutional for Congress to remove habeas review of legal and constitutional claims of noncitizens subject to removal without providing an adequate substitute. *St. Cyr*, 533 U.S. at 305. Therefore, the Supreme Court read the jurisdiction-stripping provisions in 8 U.S.C § 1252 not to eliminate habeas review over these claims. *Id.*; s*ee also Luna*, 637 F.3d at 93. Congress responded by clarifying that the provisions of 8 U.S.C. § 1252(a)(2)(A), (B), and (C) *do* eliminate habeas jurisdiction. REAL ID Act of 2005 § 106(a), Pub. L. No. 109-13, 119 Stat. 231. Simultaneously, it created § 1252(a)(2)(D) to preserve review of constitutional and legal claims on a petition for review. *Id.* This was done to create an adequate substitute for habeas, to avoid the serious constitutional

§ 106(a), Pub. L. No. 109-13, 119 Stat. 231 (2005); *see also Luna v. Holder*, 637 F.3d 85, 94 (2d Cir. 2011). The purpose of § 1252(a)(2)(D) is therefore to provide an adequate and effective substitute for habeas review if a different provision has stripped jurisdiction. *See Xiao Ji Chen*, 471 F.3d at 326. It has no operation whatsoever in the absence of a separate jurisdiction-stripping provision. *Id.* at 330 n.8.

The government cites *Shabaj v. Holder*, 718 F.3d 48, 51 (2d Cir. 2013), for the proposition that § 1252(a)(2)(D) strips district courts of jurisdiction to review constitutional and legal claims. Gov't Br. 29. The government misunderstands *Shabaj*. There, the appellant attempted to rely on § 1252(a)(2)(D) to restore jurisdiction that had been stripped by § 1252(a)(2)(B)(i) and § 1182(i)(2).[11] 718 F.3d at 51. Because Shabaj sought review of the exercise of discretion itself, this Court held that the exception recognized in *Sharkey* for procedural errors did not apply. *Id*. ("Shabaj seeks '*de novo* review of [his] waiver application . . . Thus, *Sharkey* is inapplicable, and Shabaj's claim must fail.'"). Hence, this Court explained in *Shabaj,* where a separate jurisdiction-stripping provision applies, a petitioner cannot rely on § 1252(a)(2)(D) to *restore* jurisdiction outside of a petition for review. No decision

---

issue that the Supreme Court had indicated would arise if Congress eliminated habeas review over legal and constitutional claims. *Luna*, 637 F.3d at 94.

[11] Shabaj was seeking review of an application for a waiver of inadmissibility under 8 U.S.C. § 1182(i). An additional jurisdiction-stripping provision not at issue here applies to that waiver. *See id.* § 1182(i)(2).

22

of this Court has interpreted § 1252(a)(2)(D) the way the government does, as an affirmative jurisdiction-stripping provision.[12]

Indeed, acceptance of the government's reading of § 1252(a)(2)(D) as a separate jurisdiction-stripping provision over all constitutional and legal claims brought against immigration agencies in district court would have drastic consequences beyond this case. The Second Circuit, and circuit courts across the country, have long recognized district court jurisdiction over constitutional and legal claims where no separate jurisdiction-stripping provision applied. *See e.g.*, *Firstland Int'l, Inc. v. U.S. I.N.S.*, 377 F.3d 127 (2d Cir. 2004); *Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008); *Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172 (3d Cir. 2019); *Amin v. Mayorkas*, 24 F.4th 383 (5th Cir. 2022); *Hosseini v. Johnson*, 826 F.3d 354 (6th Cir. 2016); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250 (11th Cir. 2020). The government's reading of § 1252(a)(2)(D) would divest the relevant courts of jurisdiction in each of these cases. It cannot be that courts across multiple circuits simply failed to notice that § 1252(a)(2)(D) surreptitiously deprived district courts

---

[12] The government cites *Nouritajer v. Jaddou*, 18 F.4th 85, 90 n.1 (2d Cir. 2021); Gov't Br. 30. However, in *Nouritajer*, as in *Shabaj*, the plaintiff sought review of a discretionary decision itself. 18 F.4th at 90. Therefore, subclause (ii) barred review, and § 1252(a)(2)(D) could not restore it outside of the context of a petition for review.

of jurisdiction over any and all errors of law and constitutional violations by USCIS, whether or not covered by any jurisdiction-stripping provisions of the INA.

## IV. The district court should have reviewed Mr. Rodriguez's U visa denial, because upon remand he can reapply for a (d)(14) waiver and become eligible for a U-visa.

The district court erroneously dismissed Mr. Rodriguez's claim challenging USCIS's adjudication of his U visa, holding that Mr. Rodriguez could not state a claim regarding his U visa because his inadmissibility had not been waived.[13] J.A.-71-72. It instead should have reviewed Mr. Rodriguez's argument that USCIS's adjudication of his U visa was legally erroneous and remanded to USCIS to correct the legal error. At that point, Mr. Rodriguez would have been able to reapply for a (d)(14) waiver, which, if granted, would make him eligible for a U visa.

Mr. Rodriguez seeks correction of USCIS's erroneous conclusion that he was not the victim of a qualifying crime under 8 U.S.C. § 1101(a)(15)(U). If the district court directs USCIS to correct this legal error, he will have the opportunity to reapply for a waiver and submit new evidence in support of a favorable exercise of

---

[13] For the first time in this litigation, the government goes even further and claims that without a waiver of inadmissibility, relief from USCIS's errors in adjudicating Mr. Rodriguez's U visa would amount to an "advisory opinion." Gov't Br. 34; *compare* Gov't Memo of Law in Support of Mot. to Dismiss at 16–17. However, the government has not asked this Court to dismiss Mr. Rodriguez's U visa claim for lack of subject matter jurisdiction, Gov't Br. 33–35, as would be appropriate if he indeed were seeking an advisory opinion, *See California v. Texas*, 141 S. Ct. 2104, 2112 (2021) (identifying the limitation on advisory opinions as jurisdictional). Since Mr. Rodriguez is requesting concrete relief that will redress a cognizable injury, he is not seeking an advisory opinion. S*ee Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (courts are limited to deciding "concrete legal issues, presented in actual cases, not abstractions.").

discretion. 8 C.F.R § 212.17(b)(3). If this Court or the district court vacates the USCIS denial of his U visa petition and remands for further proceedings, Mr. Rodriguez, through counsel, proffers that he would provide new and material evidence in support of his waiver application. This includes evidence that he has not received any criminal convictions in the approximately four and a half years since the denial of his U visa; that he has helped to raise his U.S. citizen son, now thirteen years old; and that he has previously successfully challenged DHS's racially discriminatory practices. *See Rodriguez v. Barr*, 943 F.3d 134, 143 (2d Cir. 2019).

If, on the other hand, the USCIS denial is affirmed, he will not be able to present this additional evidence to the agency. He thus has a significant stake in a court determining whether USCIS erred in concluding he was not the victim of a qualifying crime. The "loss of a significant opportunity" to receive a visa "is itself a concrete injury cognizable by the federal courts." *Thatikonda v. U.S. Dep't of Homeland Sec.*, No. 1:21-cv-1564-RCL, 2022 WL 425013, at *4 (D.D.C. Feb. 11, 2022) (internal quotations omitted).

The government insists that since Mr. "Rodriguez does not claim to have a new application for a waiver of inadmissibility pending," the Court should not review his U visa claim. Gov't Br. 34. But the government fails to advise the Court that, by its own regulations and policies, Mr. Rodriguez is *not allowed* to reapply for

a waiver of inadmissibility without a pending U visa.[14] If the district court were to remand his U visa to USCIS, Mr. Rodriguez would have a pending U visa again, which would allow him to reapply for an inadmissibility waiver. It is precisely that opportunity to reapply for a waiver that Mr. Rodriguez seeks.

The government points out that a reviewing court may uphold an agency's decision on alternative grounds. Gov't Br. 35. Mr. Rodriguez recognized as much in his appeal brief. Rodriguez Br. 43. However, it remains true that "the operative question for a reviewing court" considering remand is one of futility, and whether the reviewing court "can confidently predict the same result in the absence of errors." *Li v. I.N.S.*, 453 F.3d 129, 137 (2d Cir. 2006). The government has never disputed that this is the operative standard. Nor has it denied that Mr. Rodriguez can reapply for a waiver on remand, nor claimed that this Court can confidently predict the same result on a reapplication for a waiver. *See, e.g.*, Gov't Br. 34.

An agency remand would allow Mr. Rodriguez concrete relief by affording him the opportunity to reapply for a waiver of inadmissibility and, if granted, have his U visa itself adjudicated free from legal error. This Court should thus not allow the government to evade review of its clear legal error in adjudicating his U visa on

---

[14] Dept. Homeland Security, *Form I-192, Instructions for Application for Advance Permission to Enter as a Nonimmigrant*, https://www.uscis.gov/sites/default/files/document/forms/i-192instr.pdf (allowing a "petitioner" for U nonimmigrant status to apply for waiver). *See also* 8 C.F.R. § 212.17(a) (requiring applicants for (d)(14) waivers to apply in accordance with the instruction forms for Form I-192).

26

the ground that he presently lacks a waiver of inadmissibility. The Court should instead vacate and remand to the district court to determine whether Mr. Rodriguez was in fact a victim of a qualifying crime under 8 U.S.C. § 1101(a)(15)(U).

**CONCLUSION**

Petitioner Cristian Rodriguez respectfully requests that this Court reverse the

decision of the district court that it lacked jurisdiction to review USCIS's failure to

adjudicate his (d)(14) waiver and legal errors in adjudicating his U visa, with

instructions to remand to USCIS to decide Mr. Rodriguez's (d)(14) waiver as

provided by statute and for the district court to determine whether the criminal

activity Mr. Rodriguez suffered was a qualifying crime under the U visa statute.

Respectfully submitted,

/s/ Michael J. Wishnie
Charlotte Lawrence, Law Student Intern
María Perales Sánchez, Law Student Intern
Benjamin Rodgers, Law Student Intern
Neha Sharma, Law Student Intern
Michael J. Wishnie, Esq.
JEROME N. FRANK LEGAL SERVICES ORG.
Yale Law School[15]
P.O. Box 209090
New Haven, CT 06520
(203) 432-4800
michael.wishnie@ylsclinics.org
*Counsel for Plaintiff-Appellant*

---

[15] This brief does not purport to state the views of Yale Law School, if any.

28

# Addendum

**8 U.S.C. § 1252(a)(2)(D)—Judicial review of certain legal claims**

Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(e) and Local Rule 32.1(4)(b) because this brief contains 6,957 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it is prepared in a proportionally spaced 14-point roman-style font, Times New Roman.

/s/Michael Wishnie
Michael Wishnie

Dated: New Haven, Connecticut
        November 13, 2023

30